ILLINOIS HEALTH CARE ASSOCIATION *et al.*, Plaintiffs-Appellants, v. JOAN WALTERS, as Director of the Department of Public Aid, Defendant-Appellee.

First District (5th Division)    No. 1—97—3820

Opinion filed January 29, 1999.—Rehearing denied April 8, 1999.

James J. Casey and Paul C. Ziebert, both of Ross & Hardies, of Chicago, for appellants.

James E. Ryan, Attorney General, of Chicago (Barbara Preiner, Solicitor General, and James C. O'Connell and David Adler, Special Assistant Attorneys General, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiffs Illinois Health Care Association (IHCA) and Heartland Manor Nursing Center, Inc. (Heartland), appeal from the circuit court's order dismissing the amended complaint for lack of subject matter jurisdiction. The court found that this action was against the state and, therefore, only the Illinois Court of Claims could exercise

jurisdiction. On appeal, plaintiffs argue that the circuit court erred in finding that it lacked jurisdiction because this action was not against the state. For the following reasons, we affirm the judgment of the circuit court.

On September 12, 1989, plaintiffs filed an amended complaint in the circuit court of Cook County against the Director[1] of the Illinois Department of Public Aid (IDPA). Plaintiff IHCA is a professional trade organization which represents several hundred nursing homes in Illinois. Plaintiff Heartland is an Illinois nursing home and a member of the IHCA. In count I, plaintiffs alleged that the IDPA's method of calculating reimbursement rates paid to nursing homes violated the Medicaid reimbursement provisions of the Illinois Public Aid Code. Ill. Rev. Stat. 1985, ch. 23, pars. 5—5.4, 5—5.5. Plaintiffs claimed in count II that the IDPA violated the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1001 *et seq.*) because certain regulations were not promulgated in accordance with the prescribed rule-making procedures. Plaintiffs challenged IDPA's billing system as violative of "An Act to require prompt payments by the State of Illinois ***" (the State Prompt Payment Act) (Ill. Rev. Stat. 1985, ch. 127, par. 132.401 *et seq.*) in count III. All three counts requested declaratory, injunctive, and money damages relief.

In light of this case's long procedural history, only the pertinent background information will be narrated. Partial summary judgment in plaintiffs' favor had been granted as to count II, so the case went to trial on counts I and III. After presentation of plaintiffs' case in chief, the court granted defendant's motion pursuant to section 2—1110 of the Code of Civil Procedure. 735 ILCS 5/2—1110 (West 1992). This finding was reversed on appeal in *Illinois Health Care Ass'n v. Wright*, 268 Ill. App. 3d 988, 999, 645 N.E.2d 1370, 1376 (1994), with instructions to determine whether the circuit court or the Illinois Court of Claims had subject matter jurisdiction in this case. Upon remand, the circuit court dismissed the case for lack of jurisdiction as to counts I and III. Despite the previous decision granting partial summary judgment as to count II, the court subsequently also dismissed that count for lack of jurisdiction.

On appeal, the only issue to be determined is whether this is an action against the state. If a suit is filed against the state, jurisdiction may be exercised only by the Illinois Court of Claims. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 186, 470 N.E.2d 1029, 1038 (1984). Relying primarily on *Senn Park*, plaintiffs contend that their case is

---

[1]Joan Walters is the successor to Robert W. Wright, the original named defendant in this case.

not against the state because defendant exceeded her statutory authority. Accordingly, plaintiffs argue, this action is properly heard in the circuit court.

■ Whether a suit is brought against the state does not depend on the named parties in the suit but, rather, on the issues raised and the relief sought. *Senn Park*, 104 Ill. 2d at 186, 470 N.E.2d at 1038. If a suit is brought against a state official, yet the judgment could operate to control the actions of the state or subject it to liability, then the suit is, in actuality, against the state. *Senn Park*, 104 Ill. 2d at 187, 470 N.E.2d at 1038. This preserves the doctrine of sovereign immunity by preventing interference of both the state's performance of governmental functions and its control over state funds. *Senn Park*, 104 Ill. 2d at 188, 470 N.E.2d at 1039. On the other hand, where a state officer acts in excess of his or her statutory authority, the suit is not against the state because it is presumed that the state does not violate its laws or constitution. *Senn Park*, 104 Ill. 2d at 189, 470 N.E.2d at 1039.

Plaintiffs rely heavily on *Senn Park* to support their claims. In *Senn Park*, as in the present case, the Director of the IDPA was the only defendant. This, however, did not preclude the court from engaging in an analysis of the issues raised and the relief sought. The court ultimately determined that the suit was not against the state because it was an action to compel a public official to perform a clear and mandatory duty. *Senn Park*, 104 Ill. 2d at 189, 470 N.E.2d at 1039 ("plaintiffs sought a writ of *mandamus* against [the Director of the IDPA] personally to direct him to pay them in accordance with the prior approved State plan"). Discretionary authority was not conferred on the Director nor was such discretion necessary in order for him to perform. Consequently, the court did not consider the cause of action to be against the state. Importantly, this conclusion did not frustrate the purposes of sovereign immunity because the state could not claim interference with its functions when the act complained of was unauthorized by statute. *Senn Park*, 104 Ill. 2d at 188, 470 N.E.2d at 1039.

■ The issues raised and relief sought in count I of this case lead us to conclude, unlike *Senn Park*, that this count constitutes an action against the state. In count I, plaintiffs complain that the IDPA violated sections 5—5.4(2) through (4) of the Public Aid Code. Ill. Rev. Stat. 1985, ch. 23, pars. 5—5.4(2) through (4). This statute prescribes the requirements and parameters the IDPA must follow in determining reimbursement rates paid to nursing homes. The reimbursement rate is based on a formula that includes three components: nursing rate, capital rate, and support rate. The nursing rate component covers the direct costs of caring for nursing-home residents. Reimbursement of nursing care is calculated by assessing each resident's utilization of

services and the level of care provided. This periodic resident assessment is done by nurse surveyors with the aid of a patient assessment instrument called the "Inspection of Care Guidelines." The surveyors determine the level of care required by the residents and which services the residents have used. The services provided by the nursing homes have previously been assigned minutes per day, which eventually translate into costs.

Plaintiffs allege that defendant violated the statute when conducting patient assessments by failing to take into account the actual costs as required in sections 5—5.4(2) through (4). In 1985, the IDPA used the patient assessment instrument to determine that the amount of reimbursement would be reduced by approximately $4 per resident. Rather than impose this reduction immediately and all at once, the IDPA instituted a graduated reduction of the reimbursement rate to take place over a period of years. Plaintiffs argue that this was an arbitrary manipulation of the patient assessment instrument and, therefore, not based on actual costs. Plaintiffs further claim that the assessment instrument failed to adequately measure the residents' nursing care needs because the assigned minutes and staffing levels had not been reviewed periodically and were not based on time and motion studies. Finally, plaintiffs contend that the capital and support rate components of the reimbursement formula were flawed because two-year-old cost reports were used to set current rates rather than the "most currently available cost reports." Ill. Rev. Stat. 1985, ch. 23, par. 5—5.4(1). To cure these alleged deficiencies, plaintiffs requested that the court order the IDPA to "[c]onduct a validated time and motion study to determine the actual time required to perform each component of nursing care" and to "[d]esign a payment system that adequately compensates nursing homes in compliance with the payment standards" provided in the statute.

A reading of the statute establishes that the IDPA has substantial discretion in determining a method for calculating reimbursement rates. Specifically, the sections at issue state:

"§ 5—5.4. Standards of Payment—Department of Public Aid. The Department of Public Aid shall develop standards of payment of skilled nursing and intermediate care services in facilities providing such services under this Article which:

***

(2) Shall take into account the actual costs incurred by facilities in providing services for recipients of skilled nursing and intermediate care services under the medical assistance program.

(3) Shall take into account the medical and psycho-social characteristics and needs of the patients.

(4) Shall take into account the actual costs incurred by facilities in meeting, licensing and certification standards imposed and prescribed by the State of Illinois ***." Ill. Rev. Stat. 1985, ch. 23, pars. 5—5.4(2), (3), (4).

Under the express language of the statute, the IDPA has the authority to develop a methodology for formulating reimbursement rates based on certain factors. The IDPA has the power to develop these calculations without interference from other entities or persons. The statute's only constraint on the IDPA in creating a formula is that the IDPA must "take into account" certain factors. However, there is no restriction as to how or to what extent those factors must be considered.

Unlike *Senn Park*, plaintiffs are not asking the IDPA to perform clear, mandatory, and nondiscretionary tasks, but are requesting that the reimbursement rates be calculated in a particular manner using a method they desire. These requests invade the discretionary nature of the statute and frustrate the doctrine of sovereign immunity. Having the IDPA calculate reimbursement rates in a certain way relinquishes control of state operations and funds to plaintiffs. As the court in *Brucato v. Edgar*, 128 Ill. App. 3d 260, 470 N.E.2d 615 (1984), so aptly stated:

"[W]hile it is true that an action to restrain a State official from acting in contravention of the law or exceeding his authority·thereunder is not considered to be against the State [citation], it is well settled that where the action seeks to control the officer's conduct in governmental matters with respect to which he has been granted discretionary authority [citation], and if a judgment for plaintiff could operate to control the actions of the State or subject it to liability, it will be deemed an action against the State even though it is not a named party therein." *Brucato*, 128 Ill. App. 3d at 264, 470 N.E.2d at 618.

See also *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 615, 618 N.E.2d 694, 705 (1993). Thus, it is for the Court of Claims to determine whether the methodology created by the IDPA, in its discretion, violated the statute.

■ ■ Plaintiffs' final contention in count I is that defendant did not use the "most currently available cost reports" to set reimbursement rates. Ill. Rev. Stat. 1985, ch. 23, par. 5—5.4(1). The Court of Claims has jurisdiction over this claim as well. A distinction has been made between cases based on a present claim for damages and those seeking to enjoin a state official from taking future action in excess of her delegated authority. *Ellis v. Board of Governors of State Colleges*

*& Universities*, 102 Ill. 2d 387, 395, 466 N.E.2d 202, 206 (1984). A case seeking to enforce a present claim must be brought in the Court of Claims.

Effective September 1, 1989, the legislature changed the language on which plaintiffs based their complaint. Prior to the substitution, the statute read, in pertinent part:

"Such rates will be based upon the most currently available cost reports ***." Ill. Rev. Stat. 1985, ch. 23, par. 5—5.4(1).

The changed language states as follows:

"Such rates will be based upon the rates calculated for the year beginning July 1, 1990, and for subsequent years thereafter shall be based on the facility cost reports for the facility fiscal year ending at any point in time *during the previous calendar year, updated to the midpoint of the rate year.* The cost report shall be on file with the Department no later than April 1 of the current rate year. Should the cost report not be on file by April 1, the Department shall base the rate on the latest cost report filed by each skilled care facility and intermediate care facility ***." Ill. Rev. Stat. 1989, ch. 23, par. 5—5.4(1).

This substitution mooted any requested injunctive relief related to this claim. Consequently, all that remains is a declaratory judgment as to whether the statute was violated during the years that the "most currently available" language was the law and, if so, whether plaintiffs were damaged. Because there is no future action to be taken on this issue, the issue has become a present claim for damages. Jurisdiction, therefore, is properly exercised by the Court of Claims.

In sum, after examining the issues and relief sought in count I, we conclude that jurisdiction is properly exercised by the Illinois Court of Claims. The fact that plaintiffs sued only the Director in an attempt to demonstrate that this suit is not against the state is unpersuasive. Because plaintiffs sought to compel compliance of a discretionary and nonministerial matter that would result in plaintiffs controlling state funds and interfering with the state's performance of governmental functions, this is a lawsuit against the state. The circuit court was correct in determining that it lacked subject matter jurisdiction.

The Court of Claims has jurisdiction over counts II and III as well. In count II, part of the relief sought was a court order mandating the IDPA's compliance with the Administrative Procedure Act when enacting rules such as "Inspection of Care Guidelines." On August 28, 1991, the IDPA adopted "Inspection of Care Guidelines'" rules pursuant to the procedures prescribed by the statute. See 15 Ill. Reg. 13390, 13399 (adopted September 13, 1991). This action cured the alleged violation complained of by plaintiffs and mooted their request for injunctive relief.

As to count III, effective July 24, 1992, the State Prompt Payment Act was amended to eliminate its coverage as to nursing homes. 30 ILCS 540/1 (West 1992). This, too, mooted any potential need by the IDPA to reform its billing system to conform with the procedures mandated in the statute.

Mooting the injunctive aspects of these counts eliminated any need for defendant to take future action if the statutes were found to be violated. However, plaintiffs' claims for declaratory relief and damages, if any, for the period of time when the statutes allegedly were violated were not mooted. The elimination of injunctive relief coupled with the existence of possible money damages transformed the requests for future action into present claims for damages that could subject the state to liability. Thus, these counts also must be heard in the Court of Claims. *Ellis*, 102 Ill. 2d at 395, 466 N.E.2d at 206.

We must emphasize that we express no opinion regarding whether plaintiffs' allegations have any merit. Our sole concern in this case was the issue of jurisdiction, and we have made no determination as to whether defendant violated the statutes in question.

For the foregoing reasons, we affirm the circuit court's dismissal of all counts for lack of subject matter jurisdiction.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.